The second case for argument is Felicia Gossett v. Jason's Deli. May it please the Court, John Rehm on behalf of Appellant Felicia Gossett. The District Court erred in finding there was no material question of fact that plaintiff requested a reasonable accommodation for her pregnancy under the Nebraska Fair Employment Practices Act and that she was retaliated against for requesting leave for her pregnancy. The District Court erred primarily because there is question of fact or evidence produced that one, the defendant knew about plaintiff's difficulties that she was having her pregnancy with her pregnancy and why she was requesting accommodation, and two, the Court applied an overly formal method of pregnancy accommodation. Under Coates v. Trinity Health 839 Federal 3rd 742 2016, in asking for a reasonable accommodation, an employee is only required to provide the employer with enough information that under the circumstances, again I'm going to repeat this, under the circumstances that the employer can be fairly said to know of the disability or the impairment and the need for the accommodation. So what are the circumstances that led to the failure to accommodate? At Exhibit Number 28, we go to some emails from May 5th of 2022, and the defendant's depositions, the terminating manager testifies in his deposition testimony at 3820 through 4013 that on May 5th of 2022, Felicia Gossett, who was pregnant, had concerns over a miscarriage because she had pushed it too hard working as an employee. She was a manager at a deli, working as a restaurant manager. Well, now you're just adding to the text of the, you just added, you know, the pregnancy. You're putting a pregnancy spin on I've worked too hard. Sure, but she, but it wasn't me that did that. It was the plaintiff. A different supervisor than originally. Your Honor, I would point you to Exhibit 28, pages 4 through 10, where Mike Wallin, who was the terminating manager, was copied in on those emails that my client sent to HR. That's not the same as face-to-face talking. Well, sure. The grant of accommodations by the prior supervisor. I have to say, this case to me is almost on all fours with Powley, which where you were, again, you were the plaintiff's attorney in Rowley, Powley. I was. And I don't find it sufficiently distinguished in your briefs. Well, in an oral argument, I would say that the distinguishment between Powley and Powley, my client had asked for an accommodation from 2016 for her back injury. And then in 2018, she tells her coworkers that she's having problems with headaches. So, in Powley, there's a distinction between the condition granted in Powley, which Powley asked for an accommodation for her back, then asked for an accommodation for her headaches, and there's a two-year gap. Now, here, going to my client asking for time off in May 27th of 2022, three weeks later, she says, she tells Wallin that I pushed it too hard and I need a day off. Whereas, three weeks before, she emails Wallin and said, I pushed it too hard in the day before. In your position, did she ever, did she testify that she face-to-face discussed or mentioned the pregnancy to Wallin? No, she did not, but she emailed it to him and he was copied. She? Yeah, she emailed him in on that. On the 5-27 or on the earlier? On May 5th. On May 5th, and then she text messages as Mr. Wallin on May 27th of 2022. I'm going back to the reference that you made that Manager Wallin okayed the accommodations that Manager Bath had allowed in response to a pregnancy request. He did. Did she ever discuss pregnancy face-to-face with Mr. Wallin according to her testimony? I don't believe so. Well, I think she did, but I don't believe she did. She did it by text message. We have a copy on an email to Bath. There's a text message to Wallin that he testifies to. Yes, there is. That is thoroughly discussed by the district court. Correct, yeah, but they don't talk about the email. Textually and otherwise. What is that? Textually and otherwise. I think the district court made a mistake in not considering the email on exhibit number 28 that Mike Wallin was copied in on. If you look at his deposition testimony on page 38, line 20 to page 13, he had known about that email. They knew about the condition. I think the court made a mistake there. Additionally, the accommodation that my client asked for in this case was she asked for a day off because she had pushed things too hard because of her pregnancy on May 27th of 2022. She asked for a day off. She asked for a modification of the schedule. Now, under Nebraska revised statute 48-1107.02. You got me on the dates here. I thought the 5-27 was, okay, I pushed myself. What was on May 5th? May 5th is when she sends the emails to Wallin, who is the terminated manager, and to the HR people more or less reminding them of the restrictions that she had in place with Bath, the former manager, in March of 2022. The district court really doesn't discuss the May emails which are in there. What's the site to May 5th? I'm not familiar. May 5th is at exhibit number 28. There are emails between... I need it in my record on appeal. Is it in the appendix? Yes, it is. Absolutely, it is. What do you mean appendix 8? Number 28 is where it's at. Well, most appendices are terribly indexed. It is exhibit number 28, and I believe Wallin's deposition is at exhibit number 4 in his testimony about what he knew. They're in the appendix on appeal. Yes, absolutely, yes. I looked at them last night myself just to make sure. They were. Going back to the accommodation issue, I think that the district court was... When my client asked for the time off, that's an accommodation. I think the district court made a mistake in saying that a request for a time off was not... I may just be confused about this, but is she seeking damages for the denial of the accommodation? She's seeking damages because she was fired, and they didn't accommodate her, and what happened in this case was... But then you have to run through the whole pretext analysis. That's true, that's true. So, I mean, the accommodation itself, you're not seeking any sort of damages other than the termination, right? Yes, correct. I mean, then there's the failure to accommodate, but she's written up and she's disciplined for asking for a failure to accommodate. Among several different failures and misuse of computer during a work hour. Is that right? I mean, it was more than just this request not to work. I will concede that there was other reasons produced by the defendant for the termination, but it's a mix of things. In the case of... There's a Nebraska case, Marshall v. Eye Care Specialty 291, Nebraska 264, 2015, where there's all sorts of mixes of permissible reasons to terminate along with reference to a disability. In this case... Is this a pretext analysis, though, that we're doing or not? Yes, it is. But getting to... Because my client was written up, was disciplined for asking for an accommodation, and the district court said, no, that's not actually an accommodation. I mean, she was disciplined for not coming into work, right? She was disciplined. That was part of it, but one of the reasons that she did not come into work was that on May 28th...  But the accommodation issue relates to one absence only. Is that correct? Right, because there's car absences. There's the misrepresentation of what they were doing, what she was doing when she was not helping with the lunch rush, right? Those are all apparently plausible reasons for termination. They are, but they're mixed in with reasons that are impermissible, which is her being disciplined for taking time off because of her pregnancy. Is that one day off, or is there more? There was one day off on that, and she had made... That's the one we've been talking about. And she had made similar complaints on May 5th about this. And so if the court finds that there is... In fact, my client did make a reasonable request for accommodation, then you would have a negative... You would have an adverse action against my client. And then that, if you lump that in with everything else, would show that there was some animus by the defendant against my client. So for those reasons, I would ask that the decision of the district court be reversed. Thank you. I was aware from my notes... I learned from the brief that at one point she was told to cover a shift after her manager called in sick. And she said she was in pain and could not complete a 12-and-a-half-hour shift. And Bath gave her the next day off. Is that the May 5th incident? No. The May 5th incident was when she was working a shift, and she was in a lot of pain, and she was concerned about having a relapse... Or not a relapse, but having a miscarriage. Oh, what? And so she emailed her HR, and she emailed Wallin and said, These are my conditions. This is what's going on. I'm very concerned about what happened on this day. And then three weeks later, something kind of similar happens, and she emails to them. So under the circumstances... What happened on May 5th? She was required to finish the shift? On May 5th, she was working her shift, and she was too strenuous, and she had pain, and she had concerns about miscarriage. But all she did was finish her shift. She didn't, in the middle of her shift, send the email. The email was sent at the end of the shift. No, it was at the end of the shift. What? Was it in the shift? Yeah, it was at the end of the shift. It was at the end of the shift, right? No, on May 5th, on May 5th. Yeah, like she'd already done the work, you know, so what's the accommodation being asked for there? Well, the accommodation was, I feel terrible. I need the day off. That's the accommodation. That's the modified work schedule under Nebraska 4811-0702. She was asking for a day off in the May 5th email? No. She was expressing concern. On May 27th? On 27th, she was. She was expressing concerns. There was a link between the two. Well, there's a three-week link, and I would encourage the judges to look at Exhibit Number, the court to look at Exhibits Number 28 and 30. You're saying May 5th satisfies the notice requirement? Because she's making the same. She wasn't argued in the brief. She's making the same complaint, though. She's making the same complaint. She wasn't argued in the brief. Was May 5th even mentioned in the brief? It was mentioned in my brief on summary judgment, and also, additionally, the. . . So it's forfeited on appeal? No. No. She had brought it up on May 5th. Is it enough just to say, I had a bad day? Right? Because, I mean, that's what the email is saying is, I had a bad day, and it doesn't say, my doctor says I need to be accommodated by A, B, and C. It doesn't say that I think I need to be accommodated by A, B, and C. It just says, I had a bad day, and I remind you that I had a deal with my prior manager. She didn't say that she had a bad day. She said she had concerns about a miscarriage. So, I mean, I think that's different than, I had a bad day. Like, I'm worried about being miscarried. I think that relates back to the pregnancy, Your Honor. But she hasn't been put on bed rest by a physician. She hasn't said that she's worried about that. I mean, what is an employer supposed to take from that? Like, were they supposed to just come back and say, well, when do you want to work again? Well, I think under 48-1107, they need to come back and make . . . There's a stronger obligate to reasonably accommodate, as the district court actually put it out in their order. So . . .  So, they at least have an obligation to ask, what accommodations are you seeking? Yes. Okay. Bayless. Thank you. May it please the Court. My name is Allison Bayless, and I represent the appellee, Jason Stelly. The district court correctly granted Jason Stelly's summary judgment motion on appellant's failure to accommodate claim under the Nebraska Fair Employment Practices Act, or FEPA. In doing so, it correctly relied on Powley v. Rail Crew Express. The bedrock legal principle on which the court in Powley relied in affirming the lower court's summary judgment order was that a plaintiff must prove she made clear that the accommodation or assistance she was requesting was for a disability, or in this case, for her pregnancy. This court should also rely on the same bedrock legal principle to affirm the lower court's summary judgment order. Now, appellant tries to distinguish Powley by pointing out that in that case, none of Ms. Powley's previously granted accommodation requests were expressly tied to migraines. She had had accommodation requests that she had expressly tied to back pain, and even submitted doctor's notes confirming that disability. And she had made some accommodation requests that she tied to headaches through comments that she made to coworkers and supervisors. That's the exact situation that appellant is arguing here, that the May 5th email, which Judge Loken is, I believe I found it at appendix page 176. It is a reference back to the date on which Ms. Gossett was required to work beyond her 10-hour shift because there was no other manager available when her replacement called in sick, and the district court had found that that would have been an undue hardship. And Ms. Gossett agreed to work that extended shift in exchange for more paid time off. It seems to me that she compromised on that accommodation and accepted an accommodation which may not have been exactly what she would have preferred, but she accepted it. Is there any case anywhere where that's been deemed to be an unreasonable accommodation? I don't know of any case off the top of my head, but essential to the district court's conclusion there was that that would have been an undue hardship. And Ms. Gossett You know, that undue hardship piece is sort of lost on me because I'm having a hard time figuring out what 11-7 manager, level 7 manager is, what they do that's so magical in this sandwich shop. And the fact is that apparently she was terminated at least in part because she was just sitting in the back room paying her bills and checking things online during a rush, and the restaurant seemed to have sold all the sandwiches they always would have sold. So the question is, what is the level 7 manager doing that proposes such an undue hardship? Because, I mean, the court makes that finding but never explains what it was that was magical about what she was doing and what all the other sandwich artists were doing. Well, what the court found was that she was the only manager at the store. So if she had left and her replacement couldn't be there and the store manager was too far away to replace her, then she would have left the store without any manager. It just would have been the employees who reported to her running the store, and that was against Jason Stelly's policy. So she recognized that she couldn't leave the store without a manager. That's why she agreed to the compromise that she'd be given additional paid time off. But Mr. Rehm tries to tie that incident back to the May 27th text that she sent Mike Wallin that said, I'm in a lot of pain. Excuse me, my body is in a lot of pain. I pushed myself too hard this week. I'm popping Tylenol as much as I'm allowed to and it's barely taking the edge off. I'm not going to be able to work tomorrow like this. That's at Appendix 188. My body is in a lot of pain could be a reference to a lot of things. She could have worked out too strenuously. She could have pushed herself too hard gardening. There are a lot of things pregnancy related and non-pregnancy related that being in pain could have been a reference to, and employers should not have to guess. In fact, they should not assume that every malady that a pregnant woman experiences is related to her pregnancy. As this court said in Hustvedt v. Alina Health Systems, the ADA does not require clairvoyance. We don't assume things. We're reviewing the district court's decision. Correct, but what Mr. Rehm is arguing We don't make assumptions like you're talking about. We review whether the district court clearly erred, if that's the standard. Right, and the district court did not clearly err because what Mr. Rehm is arguing is that Jason Stelly should have assumed that when Ms. Gossett said my body is in a lot of pain, that that was in reference to her pregnancy. And Powley spelled out that employers should not make this assumption by requiring the employee to, quote, make clear that the employee wants assistance for her disability. And FEPA, the language of FEPA, actually follows suit by requiring reasonable accommodations to the known physical limitations of an individual who is pregnant. Ms. Gossett did not make clear that she needed May 28th off because of known physical limitations for her pregnancy. Now, she testified in her deposition that that pain she was referencing in her text message was about her pregnancy, but that isn't enough. Number one, such testimony would have conflicted with her sworn interrogatory answer, which the district court pointed out. On page 148 of the appendix in response to interrogatory 12, she identifies the accommodations she requested for her pregnancy. She said shorter shifts, not to exceed 10 hours, a chair in which to sit, 10 to 15-minute breaks every couple of hours, and a lifting restriction. She says nothing about days off for pregnancy-related pain. And the district court also pointed out that in her deposition testimony, Ms. Gossett confirmed that that interrogatory answer was complete. That's at page 68 of the appendix, page 60, lines 5 through 16 of Ms. Gossett's deposition. But even if she had identified in that interrogatory response days off as a request for accommodation that she had made, under Powley she had to make clear when she requested May 28th off, not later in litigation. She had to make clear at the time that that request she was making was related to her pregnancy. And it's not clear from the face of the text message to Mike Wallin, which is the only evidence we have of what the request was at the time. So just like Ms. Powley's subjective belief in the Powley v. Rarely Expressed case, she subjectively believed that her request had been for migraines. The court said that's not enough. The same is true of Ms. Gossett's belief that her text message about pain was for pregnancy-related pain. And, Judge Loken, to your point about the request being in that text message and there are no other conversations with Mike Wallin that she had to make clear at the time that that day off on May 28th was for pregnancy-related pain, she testified in her deposition that she didn't remember whether she'd had another conversation with him or whether the message was delivered solely through her text message. That's at Appendix 80, page 125, lines 2 through 11 of her testimony. So her testimony provided years later in litigation that, yes, that pain I was referring to in my text message does nothing to turn her request at the time into a clear request for an accommodation related to her pregnancy. And so for all of these reasons, we ask the Court to affirm the District Court's order granting summary judgment. Unless there are any other questions, I yield the rest of my time. Thank you. Thank you. The case has been thoroughly briefed and argued, and we'll take it under advisement.